THE STATE EX REL. TOWN OF PRINCETON, Appellant, vs. MAIK, Clerk, Respondent.

*January 8—February 18, 1902.*

*Municipal corporations: Arbitration: Towns: Villages: Division of property on separation: "Joint property:" Judgments: Res adjudicata: Mandamus.*

1. Where, on the separation of a town and village, a controversy existed as to the disposition of a judgment existing against the village in favor of the entire town including the village, and the municipalities, in order to settle the controversy and avoid litigation, jointly sought the legal opinion of an attorney, and submitted various questions to him for decision, his decision is in no sense the award of an arbitrator.

State ex rel. Princeton v. Maik, 113 Wis. 239.

2. Until the enactment of ch. 287, Laws of 1897, a village had, for town purposes, remained a part of the town in which it was situated. Thereafter it was wholly separated from the town. While the village was part of the town it had collected and retained certain sums for licenses for the sale of liquors, and an action brought by the town to recover the same was settled and judgment entered therefor in favor of the town and against the village, on which the village had made partial payments. *Held,* that the balance due on the judgment at the time of the separation was the joint property of both municipalities within the meaning of sec. 96, ch. 287, Laws of 1897, providing that when a village is a part of a town for town purposes, and owns property "jointly with such town," such property shall be divided in proportion to the "equalized value of each," to be determined as therein provided.

3. Where such village had no separate and independent existence when the judgment was rendered, and the question as to the ownership of the judgment was not therein involved, such judgment is not *res adjudicata* on that question.

4. Where it appeared that the equalized valuation of the village was more than that of the town, and that the village had already paid two-thirds of the face of such judgment, *mandamus* will not lie to compel the village to place the amount remaining unpaid thereon upon its tax roll, and compel its collection for the benefit of the town.

Appeal from a judgment of the circuit court for Green Lake county: Geo. W. Burnell, Circuit Judge. *Affirmed.*

This is an appeal from a judgment dismissing upon the merits the relator's application made December 20, 1898, for a peremptory writ of *mandamus* to compel the village of Princeton and its officials to place the amount remaining unpaid of the judgment against the village in favor of the town entered March 30, 1895, upon the tax roll of the village, and to extend such amount, with interest, upon the taxable property of the village, and to collect the same for the benefit of the relator. It appears from the record, and is in effect found by the court, or is undisputed: That the village was first incorporated in 1865, and was reincorporated by ch. 184, P. & L. Laws of 1867. That by that act the territory comprising the village was reannexed to the

town for general municipal purposes, and it was provided in the act that it should constitute a part of the town as fully and as perfectly in all respects as before the passage of the former charter, and that the inhabitants of the territory should have and enjoy the common franchises and privileges, and be subject to the authority and control, of the town. That such charter was amended by ch. 98, Laws of 1876, which conferred or attempted to confer upon the village of Princeton the exclusive right to grant licenses for the sale of liquors within the corporate limits of the village, under the excise laws, with the proviso that within thirty days after the same was received it should transfer one half of all moneys received under the excise laws to the town treasurer for the support of the poor. That from the passage of the act until 1893 the village of Princeton assumed the right to, and its board did, issue and grant licenses under the excise laws, and receive and collect license moneys therefor, and did regularly pay over to the town one half thereof, as provided for in said act. (1) That the village remained under special charter until the spring of 1893, when it was duly decided by a majority vote that the village should be reincorporated under the general statute, as prescribed in sec. 852, R. S. 1878, as amended; but that no election was held in the town for the purpose of separating the village from the town, and the village remained a part of the town, for town purposes, until the enactment and publication of ch. 287, Laws of 1897,—April 26, 1897. That pursuant to that chapter an assessor was elected for the village at the spring election of 1897, and since that time it has been and remained an incorporated village, wholly separated from the town for all purposes. (3) That prior to July 2, 1894, the village board had adopted no ordinance for caring and .providing for the support of the village poor, but at that time did adopt such an ordinance, and since its adoption the vil-

lage has provided for and supported its own poor. (4) That after the granting of licenses in the year 1893, and on August 24, 1894, the town commenced an action against the village to recover the amount of money received by the village for the granting of licenses. That the action was disposed of upon stipulation, agreement, and settlement between the parties. That, pursuant to the stipulation, findings were made by the court, and judgment was entered thereon March 30, 1895, for $4,035.60, to be paid by the village to the town as follows: $672.60 immediately upon the rendition and docketing of the judgment; $672.60 July 15, 1895; $672.60 July 15, 1896; $672.60 July 15, 1897; $672.60 July 15, 1898; and $672.60 July 15, 1899. That, the village being a part of the town, the money so to be paid by the village to the town was for the general good of the town, which included the village, and such payment was to be for the use and benefit of the whole town, including the village. (5) That the village paid to the town the installment falling due on the entry of the judgment, and also each of the installments falling due, respectively, July 15, 1895, July 15, 1896, and (8) July 15, 1897. (6) That April 26, 1897, the village became and was separate and apart from the town, and on that day so much of the judgment as was unpaid was property belonging to the town, including the village, and was, within the meaning and scope of ch. 287, Laws of 1897, property owned by the village jointly with the town. (7) That in November, 1897, the property of the town and village, together with the property of all other municipal organizations in the county, was equalized, and the equalized value of each was fixed by the county board at its first equalization subsequent to such separation in November, 1897. That the equalized value of the town was fixed at $155,000, and the equalized value of the village was fixed as $170,000, and that thereby under the statute the town owned equitably of said judgment 31-65

thereof, and the village owned equitably 34-65 thereof.
(12) That after the passage and publication of ch. 287,
Laws of 1897, the town and village were at variance as
to the effect of that chapter, and undertook to settle such
variance and avoid litigation, and jointly sought the legal
opinion of an attorney, and by agreement submitted various
questions to him for his decision.    That one of the questions
so submitted was what was to be the disposition to be made
of the judgment which the town had against the village.
That such question was answered by the attorney in writing,
with others, to the effect that the judgment was, within the
meaning of the statute, joint property, and to be divided in
proportion to the equalized value of the town and village,
made next subsequent to the separation.    (13) That the
town has since the spring of 1898 insisted that it was enti-
tled to the whole of said judgment, irrespective of any inter-
est of the village therein, and hence the parties have been
unable to agree upon a division of the property.    (9) That
November 3, 1898, the town demanded payment of the whole
judgment and filed with the village clerk a certified trans-
cript of the same, together with the affidavit of its chairman
to the effect that the whole amount thereof was due, and a
demand that he extend the amount upon the tax roll against
the taxable property of the village.    (10) That at that time
there was nothing due to the town upon the judgment, and the
village was not in default.    (14) That November 17, 1898,
the village made an application to the county judge for the ap-
pointment of three arbitrators, under the statute, to view
the property, and appraise and fix the value thereof for the
purposes of division, which property was, April 26, 1897,
owned jointly by the village with the town, within the spirit
and meaning of ch. 287, Laws of 1897.    That such pro-
ceedings were duly had after due notice to the town.    That
upon such application, November 29, 1898, the county judge
appointed three arbitrators (named), freeholders of the

county, and not residents or taxpayers of either the town or village, to view the property, and appraise and fix the value therof for the purposes of division. That at the hearing before the county judge the town board appeared and objected to any division of the judgment, or to any acts being done or taken in reference to the same, then and there claiming and insisting that the village had no interest therein. (15) That no meeting of the arbitrators so appointed has ever been held, and nothing has been done under such arbitration, because of the pendency of this litigation; both the town and village having expressed a desire to have the law settled as to what property is to be divided, before any further proceedings before the arbitrators. (11) That a special town meeting of the electors of the town was held December 3, 1898, and the town duly authorized these proceedings, and the same were commenced December 20, 1898.

And as conclusions the law court found: (1) That the document furnished by the attorney so agreed upon, as mentioned in the twelfth finding, was not an award, and that there was no arbitration, and that the paper amounted, in law, to a legal opinion, and nothing more; (2) that the judgment and the amount unpaid thereon at the time of the separation of the village from the town is, within the spirit and meaning of sec. 96, ch. 287, Laws of 1897, property owned by the village jointly with the town, and is property to be divided between them in proportion to the equalized value of each, as fixed by the county board at the first equalization subsequent to such separation; (3) that judgment be entered dismissing the proceedings and denying the application for a peremptory writ, and for costs in favor of the defendant and against the relator, to be taxed,—and ordered judgment to be so entered. From the judgment thereon accordingly, the relator brings this appeal.

For the appellant there was a brief by *Barbers & Beglinger,* and oral argument by *Fred Beglinger.*

18]         JANUARY TERM, 1902.                245

State ex rel. Princeton v. Maik, 113 Wis. 239.

For the respondent there was a brief by *Thompsons, Hollister & Pinkerton,* and oral argument by *A. E. Thompson.*

CASSODAY, C. J.   We all agree with the relator and the trial court that the decision of the attorney, mentioned in the twelfth finding of fact, and the first conclusion of law, was a mere legal opinion, and in no sense an award of an arbitrator.

The facts are undisputed.   The exceptions to certain findings of the court are based upon the assumption that the trial court was wrong in holding that the balance due on the judgment in question was property owned by the town and the village jointly.   The principal controversy is as to the construction to be placed upon the statute which declares:

"Whenever any village heretofore organized under any general law, which at the time when this act shall take effect, shall be part of a town or towns for town purposes, and whenever any village which shall have been organized under any special law and shall at the time of reincorporation under section 1 of this act [sec. 852, R. S. 1878, as amended], be a part of a town or towns for town purposes, *shall own property jointly* with such town or towns, such property shall be divided between them in proportion to the equalized value of each as fixed by the county board at the first equalization subsequent to such separation."   Sec. 96, ch. 287, Laws of 1897.

It is undisputed that the village remained a part of the town for town purposes, first under the special charter, from 1867 to 1893, and then under the general charter, until April 26, 1897, when the act in question went into effect. From and after the passage of that act the village became a separate and independent municipality.   Secs. 5, 6, 100, ch. 287, Laws of 1897; *State ex rel. Rock v. Taylor,* 94 Wis. 267.   It is also undisputed that the judgment of March 30, 1895, was entered in an action commenced by the town against the village August 24, 1894, to recover moneys re-

ceived by the village for licenses granted by it, as mentioned in the second finding of fact, and which licenses it was supposed the village had "the exclusive right to grant" by virtue of ch. 98, Laws of 1876, purporting to amend its special charter. *Smith v. Sherry,* 50 Wis. 210. None of such licenses were granted after the spring of 1893. These things being so, it is obvious that if the unpaid balance of the judgment is property owned by the town and village jointly, within' the meaning of the statute quoted, then that statute declares:

"Such property shall be divided between them in proportion to the equalized value of each, as fixed by the county board at the first equalization subsequent to such separation."

In construing the statute the trial court adopted the ruling made by this court at an early day, wherein it was held that "the legislature, however, has an undoubted right to change the territorial limits of municipal corporations, and to detach from a town a portion of its territory and annex it to another town, and in so doing may provide for an equitable division of the common property." *Milwaukee v. Milwaukee,* 12 Wis. 93. And the trial court added, "That seems to be precisely what they have done here,—separated the town from the village, and provided for an equitable division of common property."

The power of the legislature to determine the rights and liabilities of the respective organizations cannot be well questioned. *Depere v. Bellevue,* 31 Wis. 120, 125; *Forest Co. v. Langlade Co.* 76 Wis. 605, 610; *School Directors of Pelican v. School Directors of Rock Falls,* 81 Wis. 428; *School Directors of Ashland v. Ashland,* 87 Wis. 533; *Joint School Dist. No. 8 v. School Dist. No. 5,* 92 Wis. 608.

"A statute is to be interpreted not only by its exact words, but also by its apparent general purpose." *U. S. v. Saunders,* 22 Wall. 492; *School Directors of Pelican v. School Directors of Rock Falls,* 81 Wis. 428, 432, 433.

In this last case, and in view of the object of the statute then under consideration, it was "held that the word 'credits,' as used in the act, means the balance of the assets of the district from which the territory is detached, after deducting its debts and liabilities. It includes, therefore, school houses, school sites, furniture, and fixtures." So in view of the object of the statute in question, the words "shall own property jointly" should be construed to include property owned by the town and village in common. As said by the trial court, that "does not attempt to deprive the town of any specific property," but "only provides for an equitable division of the joint or common property." To hold that the words quoted refer only to property to which both the town and the village, technically, had joint title, would seem to be contrary to the manifest purpose of the act, and render meaningless the clause which provides that such property should "be divided between them in proportion to the equalized value of each," as prescribed by the statute. As found by the trial court, the unpaid balance of the judgment "was property belonging to the town, including the village." It was for moneys received by the village for licenses granted by it while it was a part of the town, and before it had a separate and independent existence. It was property in which the inhabitants of both had a common interest. The construction suggested is in harmony with the section requiring the indebtedness to be so apportioned between the town and village. Sec. 94, ch. 187, Laws of 1897. According to Bouvier, the term "joint" "is used to express a common property interest enjoyed or a common liability incurred by two or more persons. As applied to real estate, it involves the idea of survivorship." We must hold that the balance due on the judgment at the time of the separation of the village from the town was the joint property of both, within the meaning of the statute.

There is no ground for claiming that the judgment against

the village was *res adjudicata*. The village had no separate and independent existence when that judgment was rendered. The question here presented was not involved in that case, but arises under the act of the legislature passed more than two years after the rendition of that judgment. It appears, as found by the trial court, that the village paid to the town two thirds of the judgment before this proceeding for a *mandamus* was commenced. The equalized value of the property in the village was, as found by the trial court, considerably more than the property in the town. Such being the facts, there is nothing due on the judgment from the village to the town; and hence the court properly dismissed the proceedings, and ordered judgment in favor of the defendant and against the relator for costs.

*By the Court.*—The judgment of the circuit court is affirmed.