Davis, Plaintiff in error, vs. The State, Defendant in error.

*February 3—February 18, 1908.* ·

*Criminal law and practice: Indictment and information: Sufficiency: Requirements: False pretenses: Variance: Material error: Alleging previous conviction: "Conviction:" "Sentence:" Trial: Instructions to jury: Evidence: Weight and sufficiency: Venue: Judicial notice: Statutes: Construction.*

1. Under sec. 4669, Stats. (1898), providing that when an offense charged has been created by statute, or the punishment declared by statute, the information shall, after verdict, be held sufficient if it describes the offense in the words of the statute or in words of substantially the same meaning, an information charging the defendant with obtaining money by false pretenses is *held* sufficient, although it does not allege that the person defrauded, "relying upon the false pretenses used and believing them to be true," parted with his money.

2. In an information the words used in the statutes to define a public offense need not be strictly pursued in charging an offense under such statutes, but other words conveying the same meaning may be used.

3. The provisions of sec. 4706, Stats. (1898), authorizing the court to disregard the variance between the statement in the information and the proof where the same is not material to the case, apply on appeal, whether there is an amendment of the information or not.

4. Under sec. 4737, Stats. (1898), providing for a greater punishment because of former offenses when "such sentence remains of record and unreversed," an information, after alleging the former conviction, alleged that "such *conviction* remains of record and unreversed." There was no claim that the sentence under such former conviction had been set aside. *Held*, under secs. 4658, 4659, Stats. (1898), that there was no prejudicial error, although the mistake in the use of the word "conviction" instead of the word "sentence" is not approved.

5. The term "conviction" is used in common language, and sometimes in the statutes, in two different senses. In its most common use it signifies the finding of the jury that the accused is guilty, but it is frequently used as implying a judgment and sentence of the court upon a verdict or confession of guilt.

6. An information under sec. 4737, Stats. (1898), authorizing a greater punishment because of former offenses when the accused has been convicted and sentenced therefor and "such sentence remains of record and unreversed," charging accused in this respect and that "such *conviction* remains of record and unreversed," is *held* to meet the constitutional requirement that the accused shall enjoy the right to demand the nature and cause of the accusation against him.

7. In a prosecution for obtaining money from one J. W. by false pretenses, under the evidence, stated in the opinion, there is *held* to be no fatal variance between the allegations of the information and the proof with respect to the identification of the person by whom it was claimed the defendant had been engaged to collect the money secured.

8. In a criminal prosecution for obtaining money by false pretenses, instructions to the jury relating to reasonable doubt and the elements constituting the offense charged, stated in the opinion, while not as full and accurate as they perhaps might be, are *held* to fairly present the issuable facts to the jury, and not prejudicial.

9. In a criminal prosecution the information alleged in the first count the offense and in the second the sentence for a similar crime, as authorized by sec. 4737, Stats. (1898), and the defendant requested and the court refused an instruction: "The jury, in arriving at their conclusion herein, will entirely disregard all evidence introduced herein, whether oral or documentary, in reference to the case of . . . in this court, wherein it is alleged [defendant] was sentenced to the county jail for defrauding the Schlitz Hotel out of a board bill." *Held*, that the word "herein" in the requested instructions could not be limited to the first count, and hence it was not error to refuse it entirely,

the statutory rule applying which requires each instruction asked to be given or refused in full without change or modification.

10. While a former sentence must be pleaded when relied upon to subject the accused to the heavier punishment imposed by statute on conviction of a second offense, the jury must determine the fact as to the former sentence, and the record thereof cannot be considered in arriving at their conclusion upon the separate and primary offense charged in the information.

11. Venue, like all other issuable facts in criminal cases, must be proven beyond a reasonable doubt.

12. Courts from mere inspection of maps published by state authority take judicial notice of the location of municipalities and the territorial boundaries of the jurisdiction of courts.

13. The supreme court takes judicial notice that the village, now city, of Waukesha is included within the territorial boundaries of the municipal court for the eastern district of Waukesha county.

14. A statute is to be interpreted not only by exact words, but also by its apparent general purpose.

ERROR to review a judgment of the municipal court for the eastern district of Waukesha county: C. E. ARMIN, Judge. *Affirmed.*

The plaintiff in error, who was the defendant in the court below, and who will hereinafter be referred to as defendant, was convicted by the municipal court for the eastern district of Waukesha county, under sec. 4423, Stats. (1898), for obtaining money from one M. J. Wolf by false pretenses. The information charges in substance that the defendant at the time stated, at the city of Waukesha, in the county of Waukesha, and in said municipal district, did unlawfully, knowingly, and falsely pretend to M. J. Wolf that he, *H. A. Davis,* had been engaged by one W. J. Lemon, rector of St. Mathias Episcopal Church, at said city of Waukesha, to solicit, receive, and collect for advertisements for a church program for said church, and did then and there solicit and receive from said Wolf an advertisement for said program, and collect therefor, as the price of said advertisement,

the sum of $1.50, good and lawful money of the United States of America, "by means of which false pretenses aforesaid the said *H. A. Davis* did then and there unlawfully, knowingly, and designedly obtain from said M. J. Wolf money of the value of one dollar and fifty cents ($1.50), good and lawful money of the United States of America, of the moneys of him, the said M. J. Wolf, with intent then and there to defraud him, the said M. J. Wolf." It then denies that said *Davis* had been engaged to solicit, receive, or collect for advertisements for such a program. The information then separately charges that the defendant had been convicted in said municipal court of having at the time and place stated unlawfully obtained food and accommodation at a certain hotel named without paying therefor, there being no express agreement as to credit, with intent to defraud the proprietor of the hotel; that upon such conviction the defendant had been duly sentenced to pay a fine and the costs of the prosecution, and in default of payment that he be imprisoned in the county jail for the term stated; and that such conviction remains of record and unreversed.

After a witness had been sworn and before the introduction of any evidence the defendant objected to the introduction of any evidence under the information for the reason that it did not state facts sufficient to constitute a cause of action, which objection was overruled. At the close of the testimony for the state the defendant moved the court, upon the record and testimony taken, to direct a verdict of not guilty, which motion was also overruled. The record of the prior conviction was admitted in evidence. The defendant offered no evidence and the judge gave the charge to the jury. The exception to the charge and to the refusal of the court to give certain instructions as requested will be referred to in the opinion. The jury retired with two forms of verdict, one to find the defendant guilty on two counts in the

information, separately, and one to find the defendant not guilty. When the jury returned they announced that they had agreed on a verdict and had apparently signed both verdicts, one of guilty and one of not guilty, and the court told the jury that the effect of their verdict was to find the defendant not guilty. Thereupon the foreman announced that such was not their intention, and the jury retired to further consider a verdict, under objection of defendant. The jury returned thereafter a verdict of guilty upon both counts of the information. The defendant made a motion in arrest of judgment and for a new trial, both of which were overruled, and the defendant was sentenced to the state prison for one year. The case was brought to this court on a writ of error.

The cause was submitted for the plaintiff in error on the brief of *D. J. Hemlock,* and for the defendant in error on that of the *Attorney General* and *J. E. Messerschmidt,* assistant attorney general.

BASHFORD, J. The defendant was convicted in the municipal court for the eastern district of Waukesha county, under sec. 4423, Stats. (1898), for obtaining money under false pretenses, and also of having been convicted for a former offense, subjecting him to the increased penalty imposed by statute in such cases, as charged by the information. The case is brought here upon a writ of error, and the assignments of error that are deemed material will be considered in the order presented.

The sufficiency of the first count of the information is challenged upon three grounds, the last of which only need be considered. The contention is made that the information is insufficient because it does not allege that "M. J. Wolf, relying upon the false pretenses used and believing them to be true," parted with his money. To support this position the learned counsel for defendant especially relies

upon *State v. Green,* 7 Wis. 676, and *State v. Kube,* 20 Wis. 217. The court in *State v. Green,* in considering the language of the statute creating the offense of obtaining money under false pretenses, strongly intimates that an indictment is not sufficient without an averment that the party defrauded was induced to part with his property by relying upon the truth of the false statements. The rule there suggested receives the qualified approval of the court in *State v. Kube,* 20 Wis. 217. *State v. Green* is referred to in *Steuer v. State,* 59 Wis. 472, 476, 18 N. W. 433, as holding "that in an indictment or complaint for obtaining goods under false pretenses it is necessary to set out the pretenses used, as well as the other facts which constitute the offense." It is submitted that this information did comply with that requirement and it conforms with precedents generally recognized. 2 Archbold, Crim. Prac. & Proc. 1376; Whart. Crim. Law, 239. But, conceding that *State v. Green* fully supports the position of defendant's counsel and establishes the strict rule of pleading which is contended for, it cannot prevail as against the procedure prescribed in sec. 4669, Stats. (1898). That section provides that when the offense charged has been created by any statute, or the punishment of such offense has been declared by any statute, the information shall, after verdict, be held sufficient if it describes the offense in the words of the statute or in words of substantially the same meaning; "and words used in the statutes to define a public offense need not be strictly pursued in charging an offense under such statutes, but other words conveying the same meaning may be used." This statutory rule for the construction of pleadings was enacted as sec. 20, ch. 137, Laws of 1871, when provision was first made for trial of criminal offenses upon information, and after the decisions of *State v. Green* and *State v. Kube,* above referred to. The defects of a criminal complaint were under consideration in *State ex rel. McKay v. Curtis,* 130 Wis. 357,

110 N. W. 189, and the rule applicable here was there stated. It is said (130 Wis. 365, 110 N. W. 192): "Defects or imperfections in matters of form at any stage of the proceedings which do not tend to prejudice the defendant are to be disregarded," citing secs. 4658, 4659, Stats. (1898). Sec. 4706 authorizes the court to disregard the variance between the statement in the information and the proof where the same is not material to the case. Whether there is an amendment to this information or not, the provisions of the foregoing statutes apply. We must therefore hold that there was no reversible error of the court with respect to this ruling.

The sufficiency of the second count is challenged upon the ground that it does not use the language of sec. 4737, Stats. (1898), which provides for greater punishment because of former offenses when "such sentence remains of record and unreversed," the words of the information being that "such conviction remains of record and unreversed." The information does allege that the defendant had been convicted and sentenced for the former offense, and this is supported by the record that was properly received in evidence. There was no claim that this sentence had been set aside, and the mistake in the use of the word "conviction" in the language which follows, instead of "sentence," while not to be approved, cannot be held reversible error under the statutes above referred to. We do not overlook the legal distinction between the word "sentence" and the word "conviction," as a conviction may stand and the sentence be set aside and another sentence pronounced. The term "conviction" is used in common language, and sometimes in the statutes, in two different senses. "In its most common use it signifies the finding of the jury that the person is guilty, but it is frequently used as implying a judgment and sentence of the court upon a verdict or confession of guilt." *Comm. v. Gorham,* 99 Mass. 420, 422. The term as used in this infor-

mation could not have affected the defendant, and the ruling of the court upon this question is not reversible error. This information meets the constitutional requirement that the accused shall enjoy the right to demand the nature and cause of the accusation against him.

The contention is made on behalf of the defendant that there is a fatal variance between the allegations of the information and the proof with respect to the identification of the person by whom it was claimed the defendant had been engaged to collect money for the church program. The information alleges that the defendant "had been engaged by one Rev. W. J. Lemon, rector of St. Mathias Episcopal Church." The special name of the church was given as part of the description of the person of the rector. In the testimony the rector was sometimes referred to as "Father Lemon" and the "Reverend Father Lemon;" but he was sufficiently identified as W. J. Lemon, of the Episcopal Church, so the variance consists in the omission of "St. Mathias" by the witness when referring to the Episcopal Church. W. J. Lemon himself testified that he was "a clergyman of the Protestant Episcopal Church, rector of the parish here, in the city of Waukesha," clearly indicating that there was only one Episcopal church in the city and that he was the rector thereof. Counsel for defendant cites in support of his contention the case of *Jackson v. State,* 55 Wis. 589, 13 N. W. 448, which was a prosecution for burglary, where the breaking into the building is the gist of the offense. It was held there that it is essential in charging the crime to state with reasonable certainty the owner of the building broken open and entered, and that the fact should be proved as alleged. The rule could in strictness apply only to the identification of M. J. Wolf, the person defrauded, which is not here questioned. *Koetting v. State,* 88 Wis. 502, 507, 60 N. W. 822, is also cited and is equally wide of application.

There the information charged that the defendant accepted and received money "on deposit and for safekeeping," and the court held that proof that money was received on general deposit was insufficient, upon the ground that the defendant was charged with one crime and convicted of an entirely different crime. Two of the five judges dissented from the conclusion in that case. Here the defendant was convicted of obtaining money by false pretenses from M. J. Wolf, and any mere discrepancy between the averments of the complaint as to immaterial details of statement constituting the pretenses cannot be treated as a fatal variance. This view is supported by the following cases, cited upon the brief of the attorney general: *People v. Herrick*, 13 Wend. 87; *Moore v. State*, 20 Tex. App. 233; *State v. Neimeier*, 66 Iowa, 634, 24 N. W. 247; *State v. Knowlton*, 11 Wash. 512, 39 Pac. 966; *Comm. v. Karpowski*, 167 Pa. St. 225, 31 Atl. 572. In the case last cited it was held that an indictment charging that the defendant obtained goods under the false pretense that he had money in the Merchants' National Bank of Shenandoah sustained the proof that he said the money was in the Merchants' Bank of Shenandoah, where the evidence showed that the only Merchants' Bank in the place was the National Bank.

Parts of the charge given to the jury relating to reasonable doubt and the elements constituting the offense are sharply criticised by counsel for the defendant, and while the statements respecting these matters are not as full and accurate as they perhaps should be, yet they fairly present the issuable facts to the jury, and they do not, therefore, constitute reversible error. It would serve no useful purpose to review these assignments at length.

Error is assigned upon the refusal of the court to give certain instructions requested on behalf of the defendant, one of which, not being covered by the general charge, merits special consideration, as the question in a different form may arise

in subsequent cases.   The instruction requested and re-
fused was as follows: .

"That the jury, in arriving at their conclusion herein,
will entirely disregard all evidence introduced herein,
whether oral or documentary, in reference to the case of
*State of Wisconsin v. H. A. Davis,* in this court, wherein
it is alleged he was sentenced to the county jail for sixty
days for defrauding the Schlitz Hotel out of a board bill."

The vice of the instruction is that it is not limited to the
first count of the information.   Upon the second count it
was necessary for the jury to consider this evidence.   If the
word "herein" could be held to limit the requested instruc-
tion to the first count, then the refusal to give the same was
error.   This court holds that it could not be so limited, and,
as the instruction could not be given as requested, there was
no error in refusing it entirely.   The statutory rule applies
which requires each instruction asked by counsel to be given,
without change or modification, the same as asked or refused
in full.   Sec. 2853, Stats. (1898).   This court held in *Paetz
v. State,* 129 Wis. 174, 107 N. W. 1090, that a former sen-
tence must be pleaded when relied upon to subject the ac-
cused to the heavier punishment imposed by statute in case
of a second conviction.   While the jury must determine the
fact as to the former conviction, the record thereof cannot
be considered in arriving at their conclusion upon the sepa-
rate and primary offense charged in the information.   In
criminal prosecutions evidence against the accused should
be confined to the very offense charged, and neither general
bad character nor commission of other specific disconnected
acts, whether criminal or merely meretricious, can be proved
against him, except where so connected with the offense
charged that their commission directly tends to prove some
element of the alleged offense.   *Paulson v. State,* 118 Wis.
89, 94 N. W. 771.

The contention is made that there is no proof that the

crime was committed in the city of Waukesha, and consequently the prosecution must fail. It is unquestionably the rule that venue, like all other issuable facts in criminal cases, must be proven beyond a reasonable doubt. It conclusively appears that the crime was committed in the county of Waukesha, and there is proof to show that it was committed in the city of Waukesha, and in the eastern municipal district of Waukesha county. Mr. Wolf, the party defrauded, testified that he resided in Waukesha; that he was in the back yard, back of the Schlitz Hotel, where the cooler is; that it was off Main street; that defendant said he was soliciting advertising for the Episcopal Church over there, indicating its location. The Episcopal Church was located, by other testimony, as in the city of Waukesha. Witness Anderson, who was present when the money was obtained, testified in substance that he was in Waukesha, working for Mr. Wolf, at the time, and gave a similar description of the place. This testimony would, we think, bring the case within the rule of *Kraimer v. State,* 117 Wis. 350, 93 N. W. 1097; *Grabowski v. State,* 126 Wis. 447, 105 N. W. 805; and *Duncan v. State,* 29 Fla. 439, 10 South. 815. In proving the former conviction the record was offered in evidence showing that the defendant pleaded guilty to the complaint which charged him with obtaining food and accommodations at the Schlitz Hotel in the city of Waukesha, which may be considered as further identifying the location, if it had not been already sufficiently established.

In discussing the failure of proof to establish the venue, counsel for defendant refers to the act creating the municipal court for the eastern district of Waukesha county (ch. 22, Laws of 1895), and names the towns embraced therein, and further states that the city of Waukesha is not therein mentioned. It is true that the act does not specifically name the city or village of Waukesha as included in said district; but, as stated in the preamble, this was "An act to establish a municipal court at the village of Waukesha for the eastern

municipal district of the county of Waukesha." The town of Waukesha is included by name as well as the town of Pewaukee on the north, and the court will take judicial notice of the fact that the village (now the city) of Waukesha is embraced within the boundaries of said district. Ch. 361, Laws of 1852, creates the village of Waukesha out of territory which by government description is shown to be within the boundaries of the town, and there is nothing in the record to show any change in the boundaries of the city. It is apparent from a mere inspection of maps published by state authority, and of which the court will take judicial notice, that the city of Waukesha is within the eastern municipal district of Waukesha county. The act creating this municipal court plainly manifests the legislative intent to include therein the village of Waukesha. It states that the court shall be held in the village of Waukesha. The municipal judge is vested with "the jurisdiction of all prosecutions for breach of any ordinance of all cities or villages now or which may hereafter be incorporated in said territory;" also with "all the powers and jurisdiction heretofore vested in the village justices of the village of Waukesha," etc. The terms of the court are to be held in said village, and it is required to pay one fourth the salary of the judge, and one fourth the costs collected in civil cases is to be paid into the village treasury. The court must therefore hold that the village of Waukesha, now the city, was included within the territorial limits of the municipal court for the eastern district of Waukesha county, and that it must take judicial notice of the fact. "A statute is to be interpreted, not only by its exact words, but also by its apparent general purpose." *State ex rel. Princeton v. Maik,* 113 Wis. 239, 246, 89 N. W. 183. As stated in *Hartford v. N. P. R. Co.* 91 Wis. 374, 377, 64 N. W. 1033:

"The true rule is to look at the whole and every part of the statute, and the apparent intent derived from the whole, to the subject matter, to the effect and consequences, to the

reason and spirit of the law, and thus to ascertain the true meaning of the legislature, though the meaning so ascertained conflict with the literal sense of the words; the sole object being to discover and give effect to the intention of its framers."

From a careful consideration of the many objections raised to the regularity and validity of the proceedings upon this record the court concludes there is no reversible error and that the judgment must be affirmed.

*By the Court.*—The judgment is affirmed.