**In re Marie ERICKSON, Debtor.**

**No. 86–C–329–C.**

United States District Court,
W.D. Wisconsin.

Aug. 8, 1986.

Russell & Tlusty, Merrill, Wis., for appellant Dorchester State Bank.

Amelia Ramirez, Wausau, Wis., for debtor-appellee Marie Erickson.

Boardman, Suhr, Curry & Field—John E. Knight and James E. Bartzen, Madison, Wis., amicus curiae, for Wisconsin Bankers Ass'n.

## ORDER

CRABB, Chief Judge.

This is an appeal from an order of the bankruptcy court granting debtor Marie Erickson's application for exemption under Wis.Stat. § 815.18(6) of a baler and haybine, and permitting Erickson to avoid appellant Dorchester State Bank's liens on these implements pursuant to 11 U.S.C. § 522(f). The bank contends that the baler and haybine do not qualify for the exemptions provided in § 815.18(6) for a hay loader and mower.

Section 522(b) of the Bankruptcy Code permits a debtor to choose either the exemptions listed in § 522(d) of the Code or the exemptions permitted under state law. Erickson elected the exemptions available under Wisconsin law, which exempts, among other farm implements, one hay loader and one mower, and claimed these exemptions for her baler and haybine.[1]

Following a hearing on the bank's objections to these exemptions, the bankruptcy court made the following findings of fact:

Traditionally, "hay loader" is the term used to describe the machine that loads hay, after it is dry, from the windrow to the wagon as part of the hay harvesting process. A baler performs this same function and, in addition, compacts and ties the hay into a bale. The traditional "hay loader" is obsolete and is not used in modern farming. The baler has entirely replaced the "hay loader" and might be considered the new and improved hay loader.

The term "mower" is traditionally used to describe the machine that is used to cut hay. A haybine performs this same function of cutting hay and, in addition, conditions the hay. The mower is considered an obsolete piece of machinery. The haybine is the technological successor to the mower and has entirely replaced the mower in modern farming.

---

1. Wis.Stat. § 815.18(6) exempts, *inter alia,* the following items from creditors' claims:

   (6) LIVESTOCK, FARM IMPLEMENTS AND AUTOMOBILE. Eight cows, 10 swine, 50 chickens, 2 horses or 2 mules, one automobile of the debtor not exceeding $1,000 in value, 10 sheep and the wool from the same, ... the necessary food for all the stock mentioned in this section for one year's support, ... also one wagon, cart or dray, one sleigh, one plow, one drag, one binder, one tractor not to exceed in value the sum of $1,500, one corn binder, one mower, one springtooth harrow, one disc harrow, one seeder, one hay loader, one corn planter, one set of heavy harness and other farming utensils, also small tools and implements, not exceeding $300 in value.

The court concluded that the baler and haybine were exempt under § 815.18(6) as the modern equivalents of a hayloader and mower.

As an initial matter, the bank contends that it was clearly erroneous for the bankruptcy court to find that a baler and a haybine (also known as a mower-conditioner) are the modern equivalents of a hayloader and a mower, respectively. The bank relies on the testimony of Gerald Baker, a Dorchester area implement dealer. However, on cross-examination, Baker admitted that the mower and hay loader were obsolete, and that the haybine and the baler were the modern equivalents of these implements.[2] Other witnesses, including an agricultural agent for the University of Wisconsin, Marathon County, testified that the baler and haybine are the technological successors to the hay loader and mower, and that the hay loader and mower are not used in modern agriculture. The bankruptcy court's findings of fact were not clearly erroneous.

Next, the bank contends that the bankruptcy court erred when it construed § 815.18(6) to provide exemptions for the modern equivalents of the implements named in the statute. The bank argues that the language of the statute is plain and unambiguous, that the court must give the words of the statute their obvious and ordinary meaning, and that only a mower and hay loader are exempt under the plain language of the statute. The debtor contends that the archaic language of the statute must be interpreted not only by its exact words, but according to its purpose, and that exemption laws should be construed to allow a debtor the full benefit of the law.[3]

Although there are no reported decisions expressly holding that § 815.18(6) should be construed to permit an exemption for the modern successors to the listed exempt implements, Judge Martin's decision in *In re Flake*, 33 B.R. 275 (Bankr.W.D.Wis. 1983) is suggestive. In *Flake*, the debtor claimed a "baler with thrower" under the exemption for "one binder," a "row corn picker" under the exemption for "one corn binder," and a "bale elevator" for the exemption of a "hay loader." After hearing testimony from expert witnesses, Judge Martin concluded that the implements identified in the statute performed functions substantially different from those performed by implements claimed as exempt, and that "there was no evidence presented ... that the modern implements of the debtors are the direct successors in farm operations to the now rarely used implements of the statute." 33 B.R. at 276. Implicit in this opinion is the proposition that if the debtor's implements had been the modern successors to the implements listed in the statute, they would be exempt.

In a well-reasoned opinion, Judge Frawley explained his conclusion that § 815.-18(6) should be construed to exempt the modern counterparts of the named implements.

2. Baker testified on cross-examination as follows:

Q Mr. Baker, would you describe the baler as the next technological development step in modern agriculture from the hay loader?
A Yes.
Q Okay. So it's the equivalent of the hay loader as the next technological advance; is that correct?
A Yes.
Q Okay. With respect to the mower conditioner, that is also the next technological development step from the mower; isn't that correct?
A Yes.
Q And in modern agriculture, the hay loader is obsolete; is that correct?
A Yes it is.
Q And in modern agriculture the mower is also obsolete?
A Yes.

3. The exemptions for a mower and hay loader were added to the list of exempt farm implements in 1935, along with the exemptions for a binder, corn binder, springtooth harrow, disc harrow, seeder, corn planter, and heavy harness. *See* 1935 Wis. Laws ch. 146. Other than a 1959 amendment adding an exemption for a "tractor not to exceed in value the sum of $1500" and modifying the automobile exemption, *see* 1959 Wis. Laws ch. 304, § 815.18(6) has not been changed since 1935.

The court must decide the issue of whether the Wisconsin exemption statutes allow the debtor to exempt the particular items in dispute. It is a principle of statutory interpretation that "a statute is to be interpreted, not only by its exact words, but also by its apparent general purpose." *Dialectric Corporation v. Labor and Industry Review Commission*, 111 Wis.2d 270, 330 N.W.2d 606, 610 (1983); *Davis v. State*, 134 Wis. 632, 643, 115 N.W. 150, 155 (1908). It is apparent that the purpose of this legislation was to make the machine used to cut hay and the machine used to load hay exempt from execution. The fact that the machines used for these functions have been technologically improved does not alter the purpose of this legislation.

When interpreting exemption laws, a construction should be used that will allow the debtor to utilize the full benefit of the law. *Opitz v. Brawley*, 10 Wis.2d 93, 102 N.W.2d 117 (1960). "It is well settled that exemption laws must have a liberal construction, within the limits contemplated by the Legislature, so as to secure their full benefits to the debtor." *Julius v. Druckey*, 214 Wis. 643, 649, 254 N.W. 358, 361 (1934). If the court were to interpret the exemptions as the bank suggests, the debtor would be deprived of the benefits that the Legislature intended to provide.

Another principle of statutory interpretation is that courts should avoid interpreting statutes so as to render the statute meaningless. *State v. DILHR*, 101 Wis.2d 396, 304 N.W.2d 758, 762 (1981). "A construction of a statute rendering a portion of it meaningless must be avoided." *Id.* If the court were to interpret the exemption laws as the bank suggests, the statute would become meaningless as to anything but antiquated machinery.

The bank alleges that the language of the statute is clear and unambiguous and only refers to a mower and a hay loader. The bank cites caselaw supporting the proposition that when the language of a statute is clear and unambiguous it is the duty of the court to give the words their obvious and ordinary meaning. . . . The court disagrees with the bank's assertion that the language of this statute is clear and unambiguous.

The language of the exemption statute might have been very clear when drafted, but time has cast a haze of ambiguity on the wordage. It is doubtful that if the drafters were drafting this statute today they would use precisely the same language. At the time of the drafting of this statute the machine used to mow hay was called a mower and the machine used to load hay was called a hayloader. Obviously, the reason that the drafters provided these exemptions was that these machines performed these very essential respective functions. Today the machine that mows hay is called a haybine and the machine that loads hay is called a baler. The debtor should be allowed to take the exemptions that the Legislature intended her to have. Consistent with these notions of statutory construction and interpretation, it is the conclusion of this court that the haybine and the baler are exempt property under Wisconsin exemption laws.

■■■ I agree with Judge Frawley that the construction of § 815.18(6) urged by the bank would render the statute virtually meaningless, and would prevent debtors from obtaining the protections the legislature intended to give to farmers. Accordingly, I conclude that § 815.18(6) should be construed to exempt from execution the modern equivalents of the obsolete farm implements named in the statute. A debtor claiming an exemption under § 815.18(6) has the burden of proving that the implement for which an exemption is claimed is the modern successor to an obsolete implement listed in the statute. *Cf. In re Flake*, 33 B.R. at 276. In this case, the debtor has met that burden.

The bank and *amicus curiae* Wisconsin Bankers Association contend that broadly construing § 815.18(6) will have harmful effects on farm financing, because lenders

will be unsure whether a given farm implement qualifies for a statutory exemption and, consequently, whether a security interest in that implement is enforceable. Appellant and *amicus* also suggest that the cost of farm bankruptcy proceedings will increase as expert testimony about the history and function of each piece of farm machinery becomes necessary to determine whether the machine qualifies for an exemption. I do not discount these arguments. However, given a choice between a statutory construction that might create some uncertainty in financing and one that would deprive a farm debtor of the protections of the exemption laws, I believe that it is preferable to interpret the statute in a manner that is consistent with the legislative purpose to provide exemptions for certain important pieces of farm machinery. Certainly, it would reduce uncertainty on the part of farmers, lenders and the courts if the legislature were to update § 815.18(6) to reflect modern farming techniques. Until the legislature sees fit to do so, the courts must interpret the statute in a manner consistent with its purpose.

Finally, the bank argues that because the debtor owns a mower, she should be required to claim that mower, rather than the haybine, under the mower exemption.[4] The bank argues that the exemptions of § 815.18(6) should not be construed broadly when a debtor owns property that satisfies the literal wording of the statute.

I disagree with the bank's implicit premise that whether § 815.18(6) should be construed to include the modern versions of the listed implements depends upon whether a particular debtor owns one of the obsolete implements. Whether the debtor

owns a mower does not bear on whether a haybine is a "mower" for the purposes of the Wisconsin exemption laws. If debtor's haybine is a "mower" within the meaning of § 815.18(6), as the bankruptcy court correctly concluded it is, debtor is entitled to claim the exemption for the haybine.

■ The bankers association argues that as a matter of statutory construction, the lien avoidance provision of 11 U.S.C. § 522(f)(2)(B) applicable to "implements ... or tools of the trade of the debtor" should be read to allow lien avoidance only for small tools of nominal resale value.[5] The association also contends that interpreting § 522(f) to permit lien avoidance without a value limitation may constitute a taking under the Fifth Amendment.

From the record transmitted on appeal, it does not appear that either of the parties to this action raised any argument with respect to the interpretation or constitutionality of § 522(f) in the bankruptcy court.[6] Neither party has presented any arguments concerning § 522(f) to this court. Accordingly, I decline to review the bankruptcy court's conclusion that debtor may avoid the bank's liens on her baler and haybine pursuant to § 522(f). *See Bell v. Wolfish,* 441 U.S. 520, 531 n. 13, 99 S.Ct. 1861, 1870 n. 13, 60 L.Ed.2d 447 (1979) (arguments of *amicus curiae* that were not presented to or passed on by the lower court or urged by either party would not be considered by the Court); *see also United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 60 n. 2, 101 S.Ct. 1559, 1562–63 n. 2, 67 L.Ed.2d 732 (1981); *Knetsch v. United States,* 364 U.S. 361, 370, 81 S.Ct. 132, 137, 5 L.Ed.2d 128 (1960).[7]

---

**4.** The bankruptcy court found that the debtor did not use the mower in her farming operation. The mower has a value of $25.00.

**5.** The haybine at issue has an appraised value of $1500 to $2000, and the baler is appraised at $400.

**6.** The interpretation and constitutionality of § 522(f) were not argued at the hearing on the bank's objections to debtor's application for lien avoidance, nor were these issues addressed in Judge Frawley's opinion and order. The par-

ties' briefs below were not included in the record on appeal.

**7.** I note that in *In re Patterson,* 64 B.R. 120 (W.D.Wis.1986) (Shabaz, J.) and *In re Flake,* 33 B.R. 275, 276–277 (Bankr.W.D.Wis.1983), the courts rejected the argument that, as a matter of statutory interpretation, § 522(f) permits a debtor to avoid only liens on property of nominal value.

As for the association's constitutional argument, I note that in *United States v. Security*

IT IS ORDERED that the March 17, 1986 order of the bankruptcy court is AFFIRMED. The clerk of court shall enter judgment in favor of debtor Erickson dismissing the appeal of appellant Dorchester State Bank.

*Industrial Bank,* 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982), the Supreme Court held that § 522(f) should be construed to apply prospectively to avoid the potential constitutional problem raised by retroactive lien avoidance. This holding implies that prospec-

tive application of the statute does not present constitutional difficulties.