Boisliniere v. The Board of County Commissioners.

CHARLES L. BOISLINIERE, Coroner of St. Louis County, v. THE
BOARD OF COUNTY COMMISSIONERS.

*Coroner.*—The object of a coroner's inquest is to ascertain the cause of the
death. The authority of the coroner, in this branch of his office, is neces-
sarily judicial in its character. Being the sole judge as to the propriety or
necessity of holding the inquest, his action in that respect is not subject to
revision by the county commissioners; and he is entitled to fees under the
statute notwithstanding the verdict of the coroner's jury discloses that the
deceased died of a natural death, and not by casualty or violence. *

*Petition of Coroner of St. Louis County for mandamus.*

Agreed case:

" Whereas, Louis C. Boisliniere, coroner of St. Louis county,
is about to present to the honorable the Supreme Court of
the State of Missouri a petition praying that a writ of man-
damus may issue from said court, directed to the county
commissioners of said county, commanding them to allow
certain items in the bill of said coroner against said county,
a true copy of which is hereto annexed; and whereas, said
items, having been approved by the auditor of said county,
were disallowed and rejected by said commissioners on the
ground that the verdict of the jury, in each several inquest
for which said charge was made, showed that the deceased
died of a natural death, and not by casualty or violent death;
and whereas, both said coroner and said county commission-
ers are desirous that the question really at issue should be
fairly presented to said Supreme Court for decision on its
merits; now, it is hereby agreed that every item in the
account has been rejected by said Board of County Commis-
sioners, and disallowed by them, after approval by the auditor,
upon the ground that said coroner is entitled to fees only in
those cases in which the deceased is supposed to have died
from casualty or violence, or where the body of any person
coming to his death has been discovered in the county, and
not in cases of natural death; and that it does not sufficiently

---

* This case was decided at the March term, 1861, but was omitted in the
cases of that term.

appear from the verdict of the jury in the several cases mentioned above, and in the account presented by the coroner that the deceased died a natural death, that those cases are within the statute, so as to authorize the coroner to charge therefor.

"And it is further agreed, that if said Supreme Court decide that the coroner is entitled to his fees for service actually rendered in each of said cases, irrespective of the character of the verdict of the jury therein or the circumstances attending the death, a peremptory mandamus may issue commanding us, the said Board of County Commissioners, to allow said items of said account in so far as the specific charges therein are in conformity with the fees allowed by statute; the said Board of County Commissioners reserving to themselves the right to strike out, in whole or in part, any specific charge in the items of said account which in their opinion is not allowed to said coroner by statute.

HAMILTON, *for Petitioner*.
S. H. GARDNER, *for County of St. Louis*."

*Hamilton*, for petitioner.

The object of a coroner's inquest is to ascertain the cause of the death. In such matters, the powers and duties of the coroner are necessarily judicial. He, therefore, is not required to satisfy the commissioners that he exercised a proper discretion, or that the case was of such character as rendered an inquest necessary. It will be presumed that he acted within his sphere of duty. The mere fact that the verdict of the jury disclosed a natural death, does not show an improper exercise or abuse of his authority. The circumstances under which the body is found may furnish as strong grounds for suspecting criminal agency in a case where such is the verdict, as in those instances in which the verdict is that the death was caused by violence or casualty. It belongs to the coroner exclusively to determine as to the expediency or necessity of holding the inquest. Any objections of mere form in the statement or certificate could have been obviated. Nothing of the kind entered into the action of the commis-

sioners. (See Coroner's Act, R. C. 1855, p. 368, "Inquests";
R. C. p. 859, 4 inst. 271; 2 Hale, 65; Giles v. Brown, 1 Mills'
C. Rep. 113.)

*S. H. Gardner*, for Board of Commissioners.

It is only in case of death by violence or cásualty, or where
the body is discovered under such circumstances as reasona-
bly to lead to the conclusion that the death was occasioned
by violence or accident, and not from natural causes, that
the county is chargeable with the costs of an inquest. (R. C.
p. 368, § 4.) As the statute does not require an inquest to
be held, in allowing fees for such service, especially where
the verdict of the jury shows a natural death, the coroner
should make it appear to the satisfaction of the commission-
ers that the circumstances surrounding the death were of
such a nature as rendered the inquest proper if not necessary.
The coroner's certificate did not conform to the requisites of
the statute. (R. C. p. 859.)

EWING, Judge, delivered the opinion of the court.

This is a petition for mandamus to the County Commis-
sioners of St. Louis county, requiring them to allow certain
items in an account claimed to be due the petitioner, who
is the coroner of said county, as fees of office.

From the facts agreed upon, it appears the items were
approved by the auditor, but disallowed by the commission-
ers, upon the ground that the coroner is entitled to fees only
in those cases in which the deceased is supposed to have died
by casualty or violence, or where the body of any person
coming to his death has been discovered in the county, and not
in cases of natural death; and that it does not sufficiently ap-
pear from the verdict of the jury in the several cases mentioned
in the account presented by the coroner, (stating that the de-
ceased died of a natural death,) that those cases were within
the statute, so as to authorize the coroner to charge therefor.

By statute it is made the duty of the coroner, as soon as he
shall be notified of the dead body of any person supposed to
have come to his death by violence or casualty, found within

his county, to make out his warrant, directed to the consta-
ble, &c. (Inquests, R. C. p. 859.) He shall take inquests
of violent and casual deaths happening in the county, or
where the body of any person coming to his death shall be
discovered in his county. (Coroner's Act, R. C. p. 368.)

The object of an inquest, of course, is to ascertain the cause
of death—whether it was the result of violence or criminal
agency; and in order to attain this object, the coroner is
necessarily clothed with a discretion on the performance of
his duties. The authority of a coroner in this branch of his
office is necessarily judicial in its character; (4th Inst. 271;
Hale, 65; Giles v. Brown, 1 Mills' C. Rep., 113;) and the
obvious importance of this office to the criminal justice of the
county must consist, in a great measure, in the discretion
with which he exercises its functions in a judicial capacity.
To maintain, as does the counsel for the commissioners, that
an inquest should be held only in cases of death by violence
or casualty, assumes the existence of the fact which can only
be determined, in many instances, by such inquests. How
is the coroner to be guided in exercising his jurisdiction in a
given case? and when is it properly invoked in acting in
this capacity? There is not (nor could there be in the na-
ture of things) any *classification of circumstances by law* cir-
cumscribing his action, or fixing precisely the limits of his
authority. The nature of his duties and the object to be at-
tained must guide his discretion, acting, as we must presume
he does, under a sense of his obligations as an officer and the
sanction of an oath. When called upon to act, he will de-
cline or proceed to the investigation accordingly as the cir-
cumstances of the particular case are, or are not, of such a
suspicious character as to render proper an official examina-
tion, and of these he is the sole judge. But if he act, and the
result shows the death to have been caused neither by vio-
lence, nor to have been the result of casualty, it does not
follow that the inquest was improper, or that his authority
was illegally exercised or abused; for the circumstances in
this class of cases may furnish no stronger grounds for sup-

posing criminal agency than in cases where the verdict of the jury may disclose a natural death. The law has imposed no limits on the discretion of the coroner, by means of any preliminary inquiry or otherwise, for the purpose of restricting his action in making inquests; and when he acts, the presumption is he has acted in proper cases.

There is manifestly nothing in the statute to warrant the commissioners to revise the action of the coroner, or that gives them a discretion in respect to his fees. The coroner is only to present to the court a certified statement of the costs and expenses of the inquests, including his own fees, fees of jurors and witnesses, constable, and others entitled thereto, for which the county is liable; and it is the duty of the court (or commissioners) to allow the same, and order a warrant to be drawn upon the treasury. (Inquests, § 20.) They pass upon the account for no other purpose than to determine whether the specific charges therein are in conformity with the statute—not to determine whether the inquest was held in a proper case, or that the discretion of the coroner was or was not well exercised. No facts are before the commissioners by which they are to judge of this, and it is not the duty of the coroner to present them.

Let the mandamus go.