LANCASTER COUNTY V. EDGAR L. HOLYOKE.

FILED JUNE 29, 1893.    No. 5129.

1. **Coroner's Inquest**: DEFINITION OF VIEWING. The word
"viewing," as found in section 7, chapter 28, Compiled Statutes,
means something more than looking, seeing, beholding; it means
inspection and investigation, an inquiry by a coroner and a jury.

2. ———: A CORONER can lawfully hold an inquest upon the dead
bodies of only such persons as are supposed to have died by un-
lawful means.

3. ———: FEES: A CORONER, without the impaneling of a jury as
provided by the statute, is not entitled to any fees for inspection
and examination of the body of a person found dead in his
county.

ERROR from the district court of Lancaster county.
Tried below before HALL. J.

*N. Z. Snell,* for plaintiff in error.

*Thomas C. Munger, contra.*

RAGAN, C.

This suit was brought in the district court of Lancaster
county on a petition substantially as follows:

1. The plaintiff complains of the defendant and says
that the plaintiff is the duly elected, qualified, and acting
coroner of Lancaster county, Nebraska, and has been such
officer since January, 1890.

2. That on the 12th day of February, 1891, plaintiff, as
such coroner of said county, was duly notified that the
dead body of a man, one Harry Campbell, supposed to
have died by unlawful means, was found, and then was in
the city of Lincoln, Lancaster county, Nebraska.

3. Immediately upon such notification, the plaintiff, as
such coroner, went to the place where said body was lying,
a distance of three miles, and then and there found the

dead body of the said Harry Campbell lying in the yards
of the Chicago, Burlington & Quincy Railroad Company
in said county; and the plaintiff, as such coroner, then and
there took charge of said body and made a personal in-
spection and examination of said body and of the sur-
roundings, and found, upon examination thus made, that
the said body was crushed and mangled, and from the
heat of the body and pools of blood and other evidences,
that the death was recent and from violence.    The plaint-
iff also made an examination into the cause of said death
without impaneling a jury and investigated the probable
causes of said death, and as to what persons or machinery
had contributed thereto, or caused the same.    The plaintiff
also, as such coroner, then and there took charge of said
body and caused it to be removed to a place where it should
be unexposed, and to be cared for.    The plaintiff also took
charge of the papers, valuables, and personal effects on and
about the body, a watch, his money, some jewelry and
private papers, and sent them to the parents of the de-
ceased.    The plaintiff had the body of the deceased re-
moved from the ground where he was lying on a rail of
the railroad track with his one leg crushed flat, and his ab-
domen crushed also, and had the same removed to an un-
dertaker's and washed and dressed and cared for, and to be
delivered to the parents of said Harry Campbell.

On the 16th day of February, 1891, the plaintiff filed
with the county clerk of Lancaster county a claim for
viewing the body of said Campbell, $10; for mileage, 30
cents; which claim was by the board of commissioners of
said county disallowed, whereupon the plaintiff appealed
the case to the district court.

To this petition the defendant Lancaster county filed a
general demurrer, which the court overruled, and the
county electing to stand on said demurrer, the court ren-
dered judgment against the county for the claim sued for,
and the county brings the case here on error.

It will be observed that the examination made by the plaintiff of the dead body was without a jury and for this he claims to be allowed a fee of $10, as provided by section 7, chapter 28, Compiled Statutes. The language of this section applicable to this case is "for viewing the dead body, $10."

The office of a coroner is a very ancient one and came with the common law to this country from England. The powers and duties of a coroner here are what they were at common law, except in so far as they have been modified by our statutes or institutions. At common law the coroner was required to hold an inquest over the body of a person who had died from visitation of God; by chance or accident; by his own hand; by the hand of another. (2 Hale's Criminal Law, 62.) But at common law suicide was a crime and the goods of the deceased were forfeited to the king, and if any animal killed a person, or if a cart ran over him, this animal or instrument was forfeited. It is perhaps for this reason that the coroner at common law was obliged to investigate a death, although known to have been a suicide, or known to have been caused by some casualty. Our statute, however, in section 97, chapter 18, Compiled Statutes, provides: "The coroner shall hold an inquest upon the dead bodies of such persons only as are supposed to have died by unlawful means." Under this the coroner has nothing to do with investigating the death of any person unless such person is supposed to have come to his death by unlawful means. If a person was known to have committed suicide, or if he was known to have come to his death from a stroke of lightning, or known to have received his death by a fall from a building, the coroner would have nothing to do with holding an inquest over the body of such person.

The statute last above quoted, when the coroner shall have been notified of the finding of the dead body of a person supposed to have died by unlawful means, requires

the coroner to summon, forthwith, six lawful men of the county to appear before him at a time and place named in the warrant.   This statute is mandatory, and if the coroner has received notice of the finding in his county of some-one dead, and that person is supposed to have died by unlawful means, then it is the duty of the coroner to forthwith summon a jury and proceed to hold an inquest and ascertain the cause of the death of the person.   Section 105 of the same chapter provides that this jury, having inspected the body, heard the testimony, and made all needful inquiries, shall return to the coroner their inquisition in writing.   It appears from this statute, then, that in order for a coroner to act at all—that is, in order for him to view the body of a person found dead in his county—he must have reached the conclusion that the person came to his death by unlawful means; otherwise, he has nothing to do with the dead body.   The statute does not provide on what notice or information the coroner may act, or what notice or information is sufficient to authorize him to hold an inquest; but doubtless that is a matter to be exercised by him in an honest and faithful manner, and he is invested, by virtue of his office, with the discretion to determine for himself whether he should or should not hold an inquest.   Of course he must not act from mercenary motives and unnecessarily hold an inquest for the purpose of obtaining fees.   But when he does act he can only act in the manner provided by the law; that is to say, the coroner, by virtue of his office, has no right to hold an inquest alone.   When a person has been found dead and is supposed to have died by unlawful means, the statute provides that the facts as to the manner or means by which the deceased came to his death shall be ascertained by a jury.

The contention of the plaintiff here is that the word "viewing," found in section 7 of said chapter 28, is used in its ordinary sense, and that when the coroner has been informed that some one has been found dead in his

county, and it is supposed the person came to his death by unlawful means, then if the coroner goes and views this body, he has become entitled to the fee of $10 mentioned in said section. The word "viewing," as here used, means something more than looking, seeing, beholding; it means inspection, investigation, and inquiry into the cause of the death of the person, and the coroner cannot alone make this inquiry, and he is not entitled to this fee unless he has, with a jury, held an inquest as provided by law. The judgment of the district court is therefore reversed and this cause is remanded with instructions to sustain the demurrer to the plaintiff's petition.

REVERSED AND REMANDED.

THE other commissioners concur.