STATE EX REL. McKAY and another, Respondents, vs. CURTIS, Mayor, and others, Appellants.

*December 6, 1906—January 8, 1907.*

Mandamus: *Intoxicating liquors: Revocation of license: Certiorari: Adequate remedy: Statutes: Construction: "Order:" "Made pursuant to law:" Hearing before common council: Complaint: Defects: Waiver.*

1. It is the settled law of Wisconsin that *mandamus* will lie to compel the common council of a city to revoke a liquor license in a case where, upon complaint duly made, the facts requiring such revocation are established beyond dispute.

2. Although *certiorari* is a complete and adequate remedy for one who has been wrongfully deprived of his license, it is not a complete and adequate remedy where a common council dismisses proceedings for the revocation of a license when it should have revoked the license, since a judgment reversing that dismissal is barren of any substantial result except to remove a possible bar to the beginning of a new and independent proceeding for revocation.

3. Under sec. 1558, Stats. 1898 (providing that a license for the sale of intoxicating liquors may be revoked, among other things, for failure to observe "any *order* of such supervisors, trustees, aldermen, or county superintendent of the poor, or any of them, made pursuant to law"), the word "order" is a word of broad and general meaning, includes all commands, precepts, or rules made by competent authority, and hence includes an ordinance passed by the board of aldermen of a city which has been approved and published so as to become valid.

4. If such an ordinance is within the power of the common council it is an *order* "made pursuant to law."

5. A common council having duly enacted and published an ordinance prescribing the hours of closing and opening for saloons, complaint was made to the common council that a licensee was guilty of a violation of such ordinance. On the hearing the evidence clearly showed such violation, but the common council nevertheless refused to revoke such license. *Held*, that the action of the common council could be corrected and coerced by *mandamus*.

6. In such case the complaint was radically defective, in that it charged a sale of liquor after the prescribed hour of closing but failed to charge a sale thereafter and before the hour prescribed for opening. On the hearing before the common council no objection was made to the sufficiency of the complaint, and the answer and proofs showed a clear violation of the ordinance. *Held*, under the liberal rules of secs. 4658, 4659, 4706, Stats. 1898, requiring defects or imperfections in matters of form which do not tend to prejudice the defendant to be disregarded and permitting amendments, that a peremptory writ of *mandamus* requiring the common council to revoke the license was rightly ordered by the circuit court.

Appeal from a judgment of the circuit court for Dane county: E. Ray Stevens, Circuit Judge. *Affirmed.*

This is an appeal from a judgment against the mayor and common council of the city of Madison awarding a peremptory writ of *mandamus* directing them to revoke the retail liquor license of one Henry Niebuhr. The defendants made return to the alternative writ, taking issue with the recitals therein, and the issues were tried before the court and findings made in substance as follows:

(1) That the relators were residents and taxpayers of the

city of Madison, and that the defendant *Curtis* was the mayor and the remaining defendants the aldermen constituting the common council of said city.

(2) That an ordinance of said city, duly passed, provided, among other things, that all licensed saloonkeepers of said city should close or cause to be closed their respective places of business and exclude therefrom all customers, guests, and other persons at or before the hour of 12 o'clock midnight of each night and keep the same closed until 5 o'clock in the morning, under pain of a fine of not less than $25 nor more than $50 for each offense.

(3) That on July 23, 1905, Henry Niebuhr was a duly licensed saloonkeeper, conducting a saloon in said city at No. 1524 Williamson street.

(4) That on the 24th of July, 1905, complaint was duly made by the chief of police of said city to the municipal court of Dane county, charging that said Niebuhr on July 23, 1905, violated said ordinance in failing to keep his place of business closed between the hours of 12 o'clock midnight and 5 o'clock a. m., and that thereafter said Niebuhr was duly arrested, arraigned, and pleaded guilty to said complaint and was fined $25 and costs therefor.

(5) That thereafter, on August 22, 1905, the relator *Galpin* made complaint in writing under oath to said common council as follows:

"State of Wisconsin, County of Dane, City of Madison—ss.: The complaint of *F. T. Galpin*, complaining, shows to the mayor and common council of the city of Madison, Dane county, Wisconsin, that he is a resident, a taxpayer, and an elector in said city; that a license was heretofore granted to one Henry Niebuhr of said city of Madison to sell intoxicating liquors in said city; that, as this complainant is informed and believes and alleges the fact to be, the said Henry Niebuhr, on the 23d day of July, 1905, at the said city of Madison, and in the premises in which he was authorized by his said license to sell intoxicating liquors, did sell intoxicating

liquors after the hour of twelve o'clock, midnight. Upon complaint duly made, the said Henry Niebuhr was arrested and brought before the municipal court of the county of Dane to answer for selling liquor as aforesaid, and on the eighth day of August, 1905, on his plea of guilty, the said Henry Niebuhr was convicted by said court of having made the sale above complained of, and was sentenced to pay a fine for such violation. Your complainant therefore prays that a summons be issued by the common council of said city of Madison, signed by the city clerk and directed as prescribed by law, commanding the said Henry Niebuhr, so complained of, to appear before the said common council, at a time and place to be named in said summons as provided by law, to show cause why the license so issued to him as aforesaid should not be revoked.                    F. T. GALPIN."

(6) That a summons was thereafter duly issued on said complaint and served on said Niebuhr, upon the return day of which the mayor and a quorum of aldermen were present, and said Niebuhr appeared and answered said complaint and introduced the affidavits of two other persons, and the chief of police and police captain made statements.

(7) That there was no conflict in the evidence, and that it was clearly established that on said 23d day of July Niebuhr violated said ordinance by keeping his saloon open between midnight and 5 o'clock a. m., but, nevertheless, said council neglected and refused to find according to the facts, but dismissed the proceedings; all of the aldermen present at the meeting voting therefor except the defendants *Constantine, Rowley, Schmedeman,* and *L. S. Smith.*

(8) That no objection was made before the council to the sufficiency of the complaint nor to the reading of Niebuhr's answer and affidavits, that said answer and affidavits were read by his own attorney, and that the statement of the chief of police was made at Niebuhr's request.

As conclusions of law the court found that the complaint of said *Galpin* charged said Niebuhr with violation of said ordinance, and that the answer of said Niebuhr was an ad-

mission of guilt thereof, that said common council in dismissing the proceedings acted arbitrarily and capriciously, and that the relators were entitled to a peremptory writ of *mandamus* as prayed in the petition, with costs against the aldermen who were responsible for the dismissal of the proceedings. No exceptions were preserved to these findings.

For the appellants there was a brief by *John A. Aylward,* attorney, and a separate brief by *C. F. Lamb,* of counsel, and oral argument by *Mr. Aylward.*

For the respondents there was a brief by *Richmond, Jackman & Swansen,* and oral argument by *S. T. Swansen.*

WINSLOW, J. It must be considered as settled in this state that *mandamus* will lie to compel the common council of a city to revoke a liquor license in a case where, upon complaint duly made, the facts requiring such revocation are established beyond dispute. *State ex rel. Buchanan v. Kellogg,* 95 Wis. 672, 70 N. W. 300. It is argued that *certiorari* is a complete and adequate remedy, but this position is clearly untenable. *Certiorari* is a complete and adequate remedy for one who has been wrongfully deprived of his license, because a reversal of the judgment of the council will have the effect of reinstating his license. *State ex rel. Sullivan v. Tomah,* 80 Wis. 198, 49 N. W. 753. But where the council dismisses the proceedings when it should have revoked the license, a judgment reversing that dismissal is absolutely barren of any substantial result except to remove a possible bar to the beginning of a new and independent proceeding for revocation. This cannot be considered as an adequate or complete remedy. Thus the question is fairly presented whether under the facts as found it was the imperative duty of the common council to revoke Niebuhr's license upon the hearing. Sec. 1558, Stats. 1898, provides that upon verified written complaint made by a resident and filed with the city clerk charging that any licensed person keeps or maintains a disorderly

house, permits gambling therein, has sold liquor to a minor·
without written order of his parents or guardians, or to in-
toxicated persons or to known habitual drunkards, "or that he·
has not observed . . . any order of such supervisors, trustees,
aldermen, or county superintendent of the poor, or any of
them, made pursuant to law," the council shall issue a sum-
mons commanding the licensed person to appear at a time
and place named and show cause why his license should not·
be revoked, such summons to be served in the manner de-
scribed by the section.    Sec. 1559 provides that if upon such
hearing "the board shall find the complaint to be true the li--
cense shall be revoked, and if untrue the proceeding shall be
dismissed without costs to the accused."

The appellants claim that the word "order," in sec. 1558,
*supra,* does not refer to an ordinance of the city council, but·
only to the order or notice authorized to be given under the·
terms of sec. 1554 by said officials to licensed persons for-
bidding the sale of liquor for one year to spendthrifts.    We·
are unable to agree with this contention.    Had this order·
been the sole thought of the legislature, it would have been
not only easy, but natural, to refer to it as an order made·
under the provisions of sec. 1554.    On the contrary, it seems
evident from the use of the broad words "any order . . ..
made pursuant to law" that the legislature intended to in-
clude many possible orders rather than one particular order.
The word "order" is a word of broad and general meaning.
It includes all commands, precepts, or rules made by compe-
tent authority.    An ordinance passed by the board of alder-
men which has been approved and published, so as to become·
a valid ordinance is in the highest sense an order or command
of the aldermen.    If it be within their power, it is an order·
made pursuant to law.    If it be an order legitimately regu-
lating the saloon business, we can entertain no doubt that it
is one of the orders referred to in the statute.    To hold other-
wise would seriously emasculate the statute, the evident pur-

pose of which is to secure obedience by means of a penalty
more effective than paltry fines; *i. e.* by revocation of license.
This construction seems strengthened by the fact that the
bond given by a licensed saloonkeeper under sec. 1549 is
required to contain conditions substantially identical with
the provisions of sec. 1558, closing with the condition that
the licensed person will "obey *all* orders of *such* supervisors,
trustees, or aldermen, or any of them, *made* pursuant to law."
This section precedes sec. 1554, providing for the giving of
notice by aldermen forbidding sales to spendthrifts, and it
seems that the words "such aldermen," in sec. 1549, can
hardly refer to individual aldermen, but to common councils,
because there are no provisions prior to sec. 1549 in the ex-
cise law giving individual aldermen any power to make
orders, but only grants of power to common councils to issue
licenses. If the words "such aldermen," in sec. 1549, refer
to the common council, the argument is strong that the same
words used in the same connection should have the same
meaning in sec. 1558.

It is further argued, however, that the complaint made to
the council did not charge a violation of the ordinance, and
in fact charged no offense of any kind, and that there could
be no revocation of the license on such a complaint, and reli-
ance is placed on *State ex rel. Sullivan v. Tomah,* 80 Wis.
198, 49 N. W. 753, where it was held that, if the complaint
be fatally defective, the council should dismiss the proceed-
ing upon objection being made that no offense was charged.
It must be at once admitted in the present case that the com-
plaint before the council was radically defective. Instead of
charging in apt language that Niebuhr failed to close his
place of business and exclude customers therefrom at 12
o'clock midnight, or that he failed to keep the same closed
between the hours of 12 o'clock midnight and 5 o'clock a. m.,
it charged that Niebuhr sold intoxicating liquors on the
premises after the hour of 12 o'clock midnight on the 23d day

of July. While this might perhaps be construed as charging
in effect that he failed to exclude customers from his prem-
ises, it did not charge that such failure took place between
the hours of 12 o'clock midnight and 5 o'clock a. m. A sale
made at noonday of July 23d would fully satisfy the charge.
Had objection been taken, as in the case last cited, the com-
plaint should doubtless have been dismissed. But no objec-
tion was taken. The accused appeared and filed a written
answer in which, while denying that he sold any liquors, he
expressly admitted that his saloon was open on the night in
question until twenty minutes after midnight and that he
was personally in charge; and he explains and endeavors to
excuse his delinquency by the fact that he was having a dis-
pute with a customer as to whether he had paid his bill for
drinks ordered before 12 o'clock. The answer further ad-
mits that he pleaded guilty to a technical violation of the 12-
o'clock ordinance of the city and paid a fine therefor, and
that this should be considered as a sufficient punishment for
any violation of the ordinance, if such there has been. The
affidavits of two other persons who were in the saloon at the
time were introduced by the accused, and these affidavits
practically stated the same facts as to the saloon being open
and customers on the premises for twenty minutes after 12
o'clock.

Thus both the answer and the proofs showed a clear viola-
tion of the closing ordinance. No objection had been made
to the sufficiency of the complaint, and the question is whether
under these circumstances the council had any choice as to
the course to be pursued. We think it had not, even apply-
ing the strict rules of criminal pleading to the case, as was
done in the case of *State ex rel. Sullivan v. Tomah,* 80 Wis.
198, 49 N. W. 753. Much progress has been made in ridding
the criminal law of the reproach that it allows minute defects
and trivial technicalities, by which none is misled, to subvert
the course of substantial justice. The ancient rules of strict-

State ex rel. McKay v. Curtis, 130 Wis. 357.

ness in pleading and procedure have been greatly relaxed. Defects or imperfections in matters of form at any stage of the proceedings which do not tend to prejudice the defendant are to be disregarded (Stats. 1898, secs. 4658, 4659), and our Statutes have gone so far as to provide that "no indictment, information, process, return, or other proceedings in a criminal case in the courts or course of justice *shall* be abated, quashed or reversed for *any* error or mistake where the person and the case may rightly be understood by the court, and the court may, on motion, order an amendment curing such defect." Stats. 1898, sec. 4706. The complaint before the council would have charged a substantial violation of the ordinance had the words "and before five o'clock a. m." followed the words "after the hour of twelve o'clock midnight." The answer of the accused showed conclusively the fact thus omitted, and thus the case stood when the case closed, with no objection at any stage of the proceeding. It would be idle to say that the person and the case could not be rightly understood by the tribunal. Indeed, it seems that to understand them wrongly would require greater genius for misunderstanding than city councils are ordinarily supposed to possess. The statute is imperative. It leaves nothing to discretion. The ordering of an amendment cuts no real figure save to impart formal regularity to that which on its face is irregular. Whether the proceedings be amended or not the inhibition against abating or quashing the proceedings is equally imperative.

We conclude that the peremptory writ of *mandamus* was rightly ordered.

*By the Court.*—Judgment affirmed.