STATE EX REL. MARTIN, Attorney General, Plaintiff, vs. ZIMMERMAN, Secretary of State, Defendant.

*November 10—November 16, 1939.*

For the plaintiff there were briefs by the *Attorney General* and *James Ward Rector,* deputy attorney general, and oral argument by *Mr. Rector.*

*Robert M. Rieser* of Madison, for the defendant.

ROSENBERRY, C. J. Sec. 21, art. VII, of the Wisconsin constitution provides:

"The legislature shall provide by law for the speedy publication of all statute laws. . . . And no general law shall be in force until published."

Sec. 14.29, Stats., provides:

"The secretary of state shall: . . .

"(10) *Publish proposed constitutional amendments and laws.* To publish the laws as provided by section 35.64. . . ."

Sec. 35.64, Stats., provides:

*"Publication of all laws.* Every law shall be published in the official state paper immediately after its passage and approval, in type not smaller than six point; and until so published shall not take effect."

Sec. 14.18, Stats., provides:

*"Deposit of acts; notice.* The governor shall cause all legislative acts which have become laws by his approval or otherwise to be deposited in the office of the secretary of state without delay, and shall inform thereof the house in which the respective acts originated."

The position of the secretary of state is that the act deposited with him by the governor as alleged in the petition is not a law because it was not constitutionally approved, and he is therefore not required to publish it for the reason that its publication will be a futile act. This contention requires us to consider the meaning of the term "law" as used in the constitution and in the statutes with respect to publication of acts of the legislature approved by the governor. It is apparent that the word "law" was not used in its broad general sense. When so used it is defined as "the aggregate of those rules and principles of conduct which the governing power in a community recognizes as those which it will enforce or sanction." *State v. Lange Canning Co.* (1916) 164 Wis. 228, 235, 157 N. W. 777, 160 N. W. 57. In that sense an act of the legislature can never be a law until it is published as required by the constitution and the statutes. If that argument were sound, the secretary of state could prevent any act of the legislature from becoming a law by merely refusing to publish it. Under the constitution and the statutes it is clear that an act of the legislature cannot operate as a law until it has been officially published. Therefore when in sec. 21, art. VII, of the constitution the legislature is required to provide for the speedy publication of all statute laws, and it is further declared that no general law shall be in force until published, the term "law" is used in a narrower sense. It is

plain that the term "law" as there used refers to an act of the legislature which has been deposited in the office of the secretary of state, properly authenticated by the presiding officers of the two houses and approved by the governor to become effective as a rule of conduct when published.

We do not need to consider in this case acts of the legislature which become laws otherwise than by the approval of the governor for the governor in this case approved the act in part and the part approved thereby became a "law" within the meaning of that term as used in sec. 10, art. V, of the constitution. When an act so approved reaches the office of the secretary of state, the legislature has commanded that he immediately publish it. Upon its publication, unless otherwise provided, it then becomes a law in the broad sense of prescribing a rule of conduct. Neither the constitution nor the laws enacted pursuant thereto confer upon the secretary of state any discretion with respect to what he shall do with an act which reaches his office in the manner prescribed by law and in the form of law. No discretionary power to pass upon the constitutionality of acts so authenticated and deposited with him can be inferred. The statute is mandatory and imposes upon him the duty to publish which is a purely ministerial function.

The constitution prescribes and defines the powers of the legislative and executive departments of the government, and all officers in the discharge of their functions are under an obligation to comply with its requirements. The secretary of state is not vested by virtue of his office with the power of interpreting the constitution for other officers in the discharge of their duties. When the secretary of state refuses to perform a duty imposed upon him by law on the ground that some other official has not performed his duty in accordance with the provisions of the constitution, he acts judicially and exercises a power not conferred upon him.

The whole governmental process would be thrown into utter confusion if ministerial officers in one department in the

absence of legislative authority assumed to exercise the power to pass upon the validity and constitutionality of the acts of officers of co-ordinate departments of government. If one ministerial officer or one officer in the performance of a ministerial duty may constitute himself a tribunal to pass upon the acts of other officers, such power might be assumed by all officers and the governmental process would be brought to a halt.

Upon the oral argument it was ably contended on behalf of the secretary of state that the power of the secretary of state was limited to determining whether the procedural steps prescribed by the constitution had been followed, and it was not to be supposed that the secretary of state had power to pass upon the validity of acts because they violated what may be referred to as substantive provisions of the constitution. An act of the legislature which is not authorized by the constitution is no more a law than an act which has not been properly adopted because the necessary procedural steps have not been followed. In either event no effective law results. This court has said with respect to an unconstitutional law that the matter stands as if the law had not been passed. *Bonnett v. Vallier* (1908), 136 Wis. 193, 116 N. W. 885. While the present incumbent of the office disclaims any such power, if the power he does claim is vested in him, his successors in office would have a perfectly logical right to proceed the whole way and assume the power to pass upon the validity of the acts of the legislature upon substantive as well as procedural grounds. Despite the ingenious argument made with respect to limiting the discretionary power of the secretary of state to procedural matters, we see no logical ground upon which such a distinction may be based. If the act is invalid for any constitutional reason it is no law and the publication of an act which is enacted in violation of the substantive provisions of the constitution is just as futile an act as the publication of one passed in violation of procedural requirements.

We direct attention to three cases. In *State ex rel. Bentley v. Hall* (1922), 178 Wis. 109, 189 N. W. 265, it was held that the secretary of state was not required to submit a proposed constitutional amendment at the ensuing election where it appeared that a resolution published gave notice that two independent propositions were to be voted on contrary to the express provisions of sec. 1, art. XII, of the constitution. In that case the secretary of state having been advised by the attorney general that the proposed publication would be insufficient to meet constitutional requirements with respect to amendments to the constitution, the secretary of state announced that he could not properly comply with the apparent direction of ch. 479, Laws of 1921, the reason being that in the proposal passed by the legislature in 1921 certain provisions contained in the proposal adopted by the legislature in 1919 did not appear. There was, therefore, a failure to comply with the constitutional requirement that the proposal be approved by two legislatures each of which should be published. The question raised here was not raised in that case. We need not consider what the result would have been if the question had been raised. The secretary of state did not decline to publish the act of the legislature. The attorney general advised the secretary of state that the proposed constitutional amendment was not in proper form for consideration by the people. The case on its facts is very different from the case now under consideration.

In *State ex rel. Wisconsin Tel. Co. v. Henry* (1935), 218 Wis. 302, 260 N. W. 486, the secretary of state published the bill in the form in which it was received by him, and at the suit of a private party the question of the validity of the publication was considered. Manifestly, that case has no bearing upon this case.

In *State ex rel. Finnegan v. Dammann* (1936), 220 Wis. 143, 264 N. W. 627, 103 A. L. R. 1089, the secretary of state

had published an act in the form in which it reached him. The question in the case was as to the effect of a partial veto of the act. So far as we are able to discover, no case in this state has dealt with the refusal of the secretary of state to perform his statutory duty with respect to the publication of an act of the legislature which has been duly authenticated by the signatures of the speaker of the assembly and the president of the senate and approved by the governor.

On behalf of the secretary of state it is further argued that *mandamus* does not lie because the court will not require the secretary of state to publish a law which is unconstitutional and so compel him to perform a futile act. We think this position is untenable. The attorney general brings this action on behalf of the people of the state of Wisconsin, asking that one of the officers elected by the people be required to perform his statutory duty. The secretary of state neither officially nor personally has any interest whatever in the matter of the publication of this act. If it turns out that an invalid law is published the responsibility therefor rests with the governor, not with the secretary of state. It is a thoroughly well-established principle of law that no person may raise the constitutionality of an act of the legislature who is not in his official capacity or personally affected by it. *Appeal of Van Dyke* (1935), 217 Wis. 528, 259 N. W. 700. No one is affected as yet because there is no law, using the term in its broad general sense of prescribing a rule of conduct.

If and when the secretary of state is called upon to audit warrants issued under and pursuant to the act, he has duties of an entirely different nature to perform. Those duties are prescribed by secs. 14.30 and 14.31, Stats. Under those sections he is required to examine, determine, and audit *according to law* the claims of all persons against the state. It is considered that it is too plain for argument that under the facts of this case a writ of *mandamus* will lie to compel the

secretary of state to perform his clearly prescribed statutory duty. *State ex rel. Attorney General v. Cunningham* (1892), 81 Wis. 440, 51 N. W. 724.

We do not enter upon a consideration of the contention of the secretary of state with respect to the validity of the act, because that question is not now before the court. When the act is published, and the interest of some officer or citizen is adversely affected by the act, that question may be presented in a proper case. No court of last resort in the land is more liberal or more prompt than this court in the exercise of its original jurisdiction in cases where the prerogatives of the state or the duties and acts of its constitutional officers are involved.

*By the Court.*—Let the writ issue.